Robert V. Prongay (SBN 270796)
  rprongay@glancylaw.com
Charles H. Linehan (SBN 307439)
  clinehan@glancylaw.com
Pavithra Rajesh (SBN 323055)
  prajesh@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff Paulina Afshani Schwarz*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAULINA AFSHANI SCHWARZ, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>        Plaintiff,<br><br>        v.<br><br>PALO ALTO NETWORKS, INC., NIKESH ARORA, DIPAK GOLECHHA, and LEE KLARICH,<br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Paulina Afshani Schwarz ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Palo Alto Networks, Inc. ("Palo Alto Networks" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Palo Alto Networks; and (c) review of other publicly available information concerning Palo Alto Networks.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Palo Alto Networks common stock, or who sold put options of Palo Alto Networks, between August 18, 2023 February 20, 2024, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Palo Alto Networks is a global cybersecurity provider. The Company's cybersecurity platforms and services purportedly help secure enterprise users, networks, clouds and endpoints by delivering cybersecurity backed by artificial intelligence and automation. The Company operates in four areas: network security, cloud security, security operations and threat intelligence and security consulting. The Company also offers subscriptions to three platforms which bundle its services, including a network security platform, a cloud native security platform, and an AI Security automation platform.

3.      On February 20, 2024, after the market closed, Palo Alto Networks released its second quarter fiscal 2024 financial results and lowered its full year revenue and billing guidance. The Company disclosed it would now expect total revenue in the range of $7.95 billion to $8.00 billion, and total billings growth between 10-11% year-over-year. In the Company's subsequent earnings call on the same day, Palo Alto Networks Chief Executive Officer Nikesh Arora ("Arora") explained that "[o]ur guidance is a consequence of us driving a shift in our strategy in wanting to accelerate both our platformization and consolidation and activating our AI leadership." As a result

of this pivot, the Company announce it would "***bear the cost of the transition through lower upfront financial outcomes***." Essentially, the Company would now "expect a typical customer entering into a platformization transaction ***will not pay us for our technology for a period of time***." Defendant Arora stated the pivot was in reaction to, in part, seeing a "spending fatigue in cybersecurity." Defendant Arora also disclosed that, despite the Company being "positioned well for several large projects where we had requisite certifications and one technical selection" for several U.S. federal government deals, "these deals did not close," which resulted in "a significant shortfall in our U.S. federal government business" expected to continue into the third and fourth quarters of 2024. Defendant Arora claimed, "[t]he situation started off towards the end of Q1 were worsened in Q2."

4.      On this news, Palo Alto Networks common stock fell $104.12 per share, or 28.4%, to close at $261.97 per share on February 21, 2024, on unusually heavy trading volumes.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's 'platformization' strategy was not being adopted by customers; (2) that, as a result, the Company would be forced to offer significant discounts to entice customers; (3) that, as a result, the Company's billing growth was not sustainable; (4) that the Company would not close certain deals with the Federal Government in the second quarter of fiscal year 2024; (5) that, as a result, there was a substantial risk that the Company would be forced to revise its expectations for fiscal year 2024 total billings and revenue; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

11. Plaintiff Paulina Afshani Schwarz, as set forth in the accompanying certification, incorporated by reference herein, purchased Palo Alto Networks common stock and/or sold put options of Palo Alto Networks, during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12. Defendant Palo Alto Networks is incorporated under the laws of Delaware with its principal executive offices located in Santa Clara, California. Palo Alto Networks' common stock trades on the NASDAQ exchange under the symbol "PANW."

13. Defendant Arora was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Dipak Golechha ("Golechha") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendant Lee Klarich ("Klarich") has served as the Chief Product Officer of Palo Alto Networks at all relevant times.

16.     Defendants Arora, Golechha and Klarich (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Palo Alto Networks is a global cybersecurity provider. The Company's cybersecurity platforms and services purportedly help secure enterprise users, networks, clouds and endpoints by delivering cybersecurity backed by artificial intelligence and automation. The Company operates in four areas: network security, cloud security, security operations and threat intelligence and security consulting. The Company also offers subscriptions to three platforms which bundle its services, including a network security platform, a cloud native security platform, and an AI Security automation platform.

**Materially False and Misleading**

**<u>Statements Issued During the Class Period</u>**

18.     The Class Period begins on August 18, 2023. On that day, Palo Alto Networks announced its fourth quarter and fiscal year 2023 financial results in a press release that stated, in relevant part:[1]

> "***We finished off the year with strong execution and the changing environment drove more customers towards platformization***," said Nikesh Arora, chairman and CEO of Palo Alto Networks. "***Our strategy is resonating with a growing number of our customers, driving continued consolidation***, to deliver superior security outcomes. We were delighted with the reception in the market for our AI based security automation platform, XSIAM."

> "Our top-line strength showed through in our remaining performance obligation and next-generation security ARR. ***Our billings this quarter didn't fully capture that strength. We continue to make great progress in our financial transformation,***" said Dipak Golechha, chief financial officer of Palo Alto Networks. "Our operating margins increased by more than 500 basis points for the year as we continued to focus on profitability."

> **Financial Outlook**
>
> *        *        *
>
> For the fiscal year 2024, we expect:
>
> •***Total billings in the range of $10.9 billion to $11.0 billion, representing year-over-year growth of between 19% and 20%.***
>
> •***Total revenue in the range of $8.15 billion to $8.20 billion, representing year-over-year growth of 18% and 19%.***
>
> •Diluted non-GAAP net income per share in the range of $5.27 to $5.40, representing year-over-year growth of 19% and 22%.
>
> •Adjusted free cash flow margin in the range of 37% to 38%.

19.     On September 1, 2023, Palo Alto Networks filed its annual report on Form 10-K for the fiscal year ended July 31, 2023 (the "FY23 10-K"). The FY23 10-K stated in relevant part:

> **Billings**. We define billings as total revenue plus the change in total deferred revenue, net of acquired deferred revenue, during the period. We consider billings to be a key metric used by management to manage our business. We believe billings provides investors with an important indicator of the health and visibility of our business because it includes subscription and support revenue, which is recognized ratably over the contractual service period, and product revenue, which is recognized at the time of hardware shipment or delivery of software license, provided that all other

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

conditions for revenue recognition have been met. We consider billings to be a useful metric for management and investors, particularly if we *continue to experience increased sales of subscriptions and strong renewal rates for subscription and support offerings, and as we monitor our near-term cash flows*. While we believe that billings provides useful information to investors and others in understanding and evaluating our operating results in the same manner as our management, it is important to note that other companies, including companies in our industry, may not use billings, may calculate billings differently, may have different billing frequencies, or may use other financial measures to evaluate their performance, all of which could reduce the usefulness of billings as a comparative measure.

20.     The FY 2023 10-K purported to warn:

If we do not accurately predict, prepare for, and respond promptly to rapidly evolving technological and market developments and successfully manage product and subscription introductions and transitions to meet changing end-customer needs in the enterprise security industry, our competitive position and prospects will be harmed.

21.     On November 15, 2023, Palo Alto Networks announced its first quarter 2024 financial results in a press release which stated, in relevant part:

"An unprecedented level of attacks is fueling strong demand in the cybersecurity market," said Nikesh Arora, chairman and CEO of Palo Alto Networks. "*We continue to execute on platformization as customers recognize the benefits we can provide in simplifying security architectures and driving better security outcomes*."

"Our revenue, next-generation security ARR, and cRPO metrics best represent our top-line performance in Q1, while *our billings were impacted by the cost of money*," said Dipak Golechha, chief financial officer of Palo Alto Networks. "Our record cash flow generation and strong Q1 non-GAAP operating margin, illustrate our commitment to driving profitable growth."

**Financial Outlook**
Palo Alto Networks provides guidance based on current market conditions and expectations.

For the fiscal second quarter 2024, we expect:

- *Total billings in the range of $2.335 billion to $2.385 billion, representing year-over-year growth of between 15% and 18%.*

- *Total revenue in the range of $1.955 billion to $1.985 billion, representing year-over-year growth of between 18% and 20%.*

- Diluted non-GAAP net income per share in the range of $1.29 to $1.31, using 339 million to 342 million shares outstanding.

For the fiscal year 2024, we expect:

- *Total billings in the range of $10.7 billion to $10.8 billion, representing year-over-year growth of between 16% and 17%.*

- ***Total revenue in the range of $8.15 billion to $8.20 billion, representing year-over-year growth of between 18% and 19%.***

- Non-GAAP operating margin in the range of 26% to 26.5%.

- Diluted non-GAAP net income per share in the range of $5.40 to $5.53, using 338 million to 343 million shares outstanding.

- Adjusted free cash flow margin in the range of 37% to 38%.

22.   On November 17, 2023, Palo Alto Networks filed its quarterly report on Form 10-Q for the fiscal period ended October 31, 2023 (the "1Q24 10-Q"). The 1Q24 10-Q reported:

> ***We consider billings to be a useful metric for management and investors, particularly if we continue to experience increased sales of subscriptions*** and strong renewal rates for subscription and support offerings, and as we monitor our near-term cash flows.

23.   The 1Q24 10-Q purported to warn "[a] portion of our revenue is generated by sales to government entities, which are subject to a number of challenges and risks" and further purported to warn:

> If we do not accurately predict, prepare for, and respond promptly to rapidly evolving technological and market developments and successfully manage product and subscription introductions and transitions to meet changing end-customer needs in the enterprise security industry, our competitive position and prospects will be harmed.

24.   The above statements identified in ¶¶ 18-23 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company's 'platformization' strategy was not being adopted by customers; (2) that, as a result, the Company would be forced to offer significant discounts to entice customers; (3) that, as a result, the Company's billing growth was not sustainable; (4) that the Company would not close certain deals with the Federal Government in the second quarter of fiscal year 2024; (5) that, as a result, there was a substantial risk that the Company would be forced to revise its expectations for fiscal year 2024 total billings and revenue; and (6) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

25.     On February 20, 2024, after the market closed, Palo Alto Networks released its second quarter fiscal 2024 financial results and lowered its full year revenue and billing guidance (the "2Q24 Press Release"). In the Company's subsequent earnings call on the same day, Defendant Arora explained that "[o]ur guidance is a consequence of us driving a shift in our strategy in wanting to accelerate both our platformization and consolidation and activating our AI leadership." As a result of this pivot, the Company announce it would "***bear the cost of the transition through lower upfront financial outcomes***." Essentially, the Company would now "expect a typical customer entering into a platformization transaction ***will not pay us for our technology for a period of time***." Defendant Arora stated the pivot was in reaction to, in part, a "spending fatigue in cybersecurity." Defendant Arora also disclosed that, despite the Company being "positioned well for several large projects where we had requisite certifications and one technical selection" for several U.S. federal government deals, "these deals did not close," which resulted in "a significant shortfall in our U.S. federal government business" expected to continue into the third and fourth quarters of 2024. Defendant Arora claimed, "[t]he situation started off towards the end of Q1" and "worsened in Q2."

26.     Specifically, the 2Q24 Press Release reported the following revised expectations, in relevant part:

For the fiscal third quarter 2024, we expect:

- ***Total billings in the range of $2.30 billion to $2.35 billion, representing year-over-year growth of between 2% and 4%.***
- ***Total revenue in the range of $1.95 billion to $1.98 billion, representing year-over-year growth of between 13% and 15%.***
- Diluted non-GAAP net income per share in the range of $1.24 to $1.26, using 347 million to 351 million shares outstanding.

For the fiscal year 2024, we are updating guidance and expect:

- ***Total billings in the range of $10.10 billion to $10.20 billion, representing year-over-year growth of between 10% and 11%.***
- ***Total revenue in the range of $7.95 billion to $8.00 billion, representing year-over-year growth of between 15% and 16%.***
- Non-GAAP operating margin in the range of 26.5% to 27.0%.
- Diluted non-GAAP net income per share in the range of $5.45 to $5.55, using 345 million to 347 million shares outstanding.
- Adjusted free cash flow margin in the range of 38.0% to 39.0%.

27.     On this news, Palo Alto Networks common stock fell $104.12 per share, or 28.4%, to close at $261.97 per share on February 21, 2024, on unusually heavy trading volumes.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Palo Alto Networks common stock, or who sold put options of Palo Alto Networks, between August 18, 2023 and February 20, 2024, inclusive, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

29.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Palo Alto Networks' common stock actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Palo Alto Networks shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Palo Alto Networks or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

32.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Palo Alto Networks; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

34.     The market for Palo Alto Networks' securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Palo Alto Networks' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Palo Alto Networks' securities relying upon the integrity of the market price of the Company's securities and market information relating to Palo Alto Networks, and have been damaged thereby.

35.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Palo Alto Networks' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Palo Alto Networks' business, operations, and prospects as alleged herein.

36.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Palo Alto Networks' financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

37.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

38.    During the Class Period, Plaintiff and the Class purchased Palo Alto Networks' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

39.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Palo Alto Networks, their control over, and/or receipt and/or modification of Palo Alto Networks' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential

proprietary information concerning Palo Alto Networks, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

40.     The market for Palo Alto Networks' securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Palo Alto Networks' securities traded at artificially inflated prices during the Class Period. On February 9, 2024, the Company's share price closed at a Class Period high of $376.90 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Palo Alto Networks' securities and market information relating to Palo Alto Networks, and have been damaged thereby.

41.     During the Class Period, the artificial inflation of Palo Alto Networks' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Palo Alto Networks' business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Palo Alto Networks and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

42.     At all relevant times, the market for Palo Alto Networks' securities was an efficient market for the following reasons, among others:

(a)     Palo Alto Networks shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Palo Alto Networks filed periodic public reports with the SEC and/or the NASDAQ;

1      (c)     Palo Alto Networks regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Palo Alto Networks was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

43.     As a result of the foregoing, the market for Palo Alto Networks' securities promptly digested current information regarding Palo Alto Networks from all publicly available sources and reflected such information in Palo Alto Networks' share price. Under these circumstances, all purchasers of Palo Alto Networks' securities during the Class Period suffered similar injury through their purchase of Palo Alto Networks' securities at artificially inflated prices and a presumption of reliance applies.

44.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.

In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Palo Alto Networks who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

46.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

47.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Palo Alto Networks' securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

48.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Palo Alto Networks' securities in violation of Section 10(b) of the Exchange

Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Palo Alto Networks' financial well-being and prospects, as specified herein.

50.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Palo Alto Networks' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Palo Alto Networks and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

51.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

52.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Palo Alto Networks' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Palo Alto Networks' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Palo Alto Networks' securities during the Class Period at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Palo Alto Networks was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Palo Alto Networks securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

57.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

58.    Individual Defendants acted as controlling persons of Palo Alto Networks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.    As set forth above, Palo Alto Networks and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of

their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  April 25, 2024

**GLANCY PRONGAY & MURRAY LLP**

By:    _/s/ Charles H. Linehan_
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  clinehan@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Paulina Afshani Schwarz*

## SWORN CERTIFICATION OF PLAINTIFF

Palo Alto Networks, Inc., SECURITIES LITIGATION

I,   Paulina Afshani Schwarz                    , certify:

1.  I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2.  I did not purchase Palo Alto Networks, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Palo Alto Networks, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated:   3/27/2024   _____

DocuSigned by:

*Paulina Afshani Schwarz*
AE5E07606EE94B4...

Paulina Afshani Schwarz

**Paulina Afshani Schwarz's Transactions in Palo Alto Networks Inc. (PANW)**

**Common Stock**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 11/17/2023 | Bought* | 1,000 | $255.0000 |

**Options**

| Date | Transaction Type | Contract Type | Exp / Strike | Quantity | Price |
|---|---|---|---|---|---|
| 11/13/2023 | Sold to Open | Put | $255 / Nov 17, 2023 | -10 | $10.9000 |
| 11/17/2023 | Assigned | Put | $255 / Nov 17, 2023 | 10 | $0.0000 |
| 2/14/2024 | Sold to Open | Call | $405/ Feb 23, 2024 | -13 | $6.6000 |
| 2/14/2024 | Sold to Open | Put | $347.50 / Feb 23, 2024 | -6 | $7.8000 |
| 2/14/2024 | Sold to Open | Put | $347.50 / Feb 23, 2024 | -6 | $8.9500 |
| 2/14/2024 | Sold to Open | Put | $347.50 / Feb 23, 2024 | -10 | $9.0000 |
| 2/20/2024 | Sold to Open | Put | $335 / Feb 23, 2024 | -2 | $5.9000 |
| 2/20/2024 | Sold to Open | Put | $335 / Feb 23, 2024 | -6 | $5.9000 |
| 2/20/2024 | Sold to Open | Put | $335 / Feb 23, 2024 | -12 | $5.9000 |

*Assignment